UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

RENEE L. DYKES )
 )
V. ) NO. 2:10-CV-197
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, following the denial of Ms. Dykes' applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. Her applications were denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 46 years of age at the time of her hearing. She had past relevant work experience as a cashier and stocker and cleaner which was medium and semiskilled; as an office clerk which was sedentary and semi-skilled; as a loan originator, which was sedentary to light and semi-skilled; as a dishwasher which was medium and unskilled; and as a service department clerk which is light and unskilled.

Plaintiff's medical history is set forth in the Commissioner's brief as follows:

> Plaintiff reported on forms as part of the application process that she had experienced depression and mood swings since the age of 16 that prevented her from holding down a job for very long (Tr. 133). She had past work as an assembler, a cashier, a clerk, a customer service representative, and front desk clerk (Tr. 134). She held one of these jobs for a period of 3 years, the rest for less than 10 months each (Tr. 134). Plaintiff completed her GED and was not in special education classes (Tr. 138). Plaintiff reported she performed daily hygiene and personal care only when she was going somewhere, and that she needed sticky note reminders for pills and personal needs (Tr. 140-142). She was able to prepare quick meals such as frozen meals and sandwiches, was able to do laundry, watch TV, talk on the phone, clean her bedroom, and get the mail daily; sometimes she cared for a friend's pets (Tr. 141-143). Plaintiff was able to drive a car, shop for groceries and medicine on a weekly basis, and handle her money (Tr. 143-144).
> Plaintiff received treatment from the Virginia Center for Integrative Medicine from April 2005 through July 2007. Significantly, with the exception of February 2006, psychological symptoms are not mentioned from August 2005 until they begin to appear in March 2007 (Tr. 188, 170-195).
> Plaintiff was admitted to the ER on October 26, 2006, after a likely attempted overdose (Tr. 324-326). Urine screening was positive for benzos and opiates leading the doctor to conclude she overdosed on Xanax and Lortab (Tr. 324). She was discharged the following day to the psychiatric unit in stable condition (Tr. 324). There was no evidence of follow-up treatment (Tr. 24).

2

In July 2007, Plaintiff reported that she was very upset because her husband left her for his second cousin (Tr. 171). Plaintiff was admitted to Magnolia Ridge on July 5, 2007, and was diagnosed with polysubstance abuse and bipolar disorder (Tr. 207). Records show she was smoking and snorting crystal meth, along with drinking alcohol, and smoking 2 packs of cigarettes per day (Tr. 232). She was placed on an 8 day detoxification protocol, and a physical exam was completely normal (Tr. 207, 210). She left on July 11, 2007, because she "want[ed] out of here" (Tr. 215, 225). On July 16, 2007, Plaintiff reported that she was very upset because her husband left her for his second cousin (Tr. 171). She was readmitted again on July 26 for additional detox, and again on August 3, 2007 (Tr. 242, 271). She later reported she was kicked out after 15 days due to "stupid rules" (Tr. 277).

Plaintiff underwent a consultative examination for her mental health by Dr. Edward Latham on October 15, 2007 (Tr. 276-278). Plaintiff reported having 8 marriages that ended in divorces, and that she was currently separated from her ninth husband (Tr. 276). Plaintiff reported she had past legal problems and had been placed on probation (Tr. 276). While she was once a "heavy drinker," she reported currently drinking only 2-3 times per week, and only "drink drinking" twice a month at a bar where she reported that she was well known (Tr. 276). She admitted past usage of marijuana, cocaine, crack, and meth as recently as 2002, but denied current usage (Tr. 276). Plaintiff did admit to misusing Lortab and smoking 2 packs of cigarettes a day (Tr. 276). Plaintiff reported leaving jobs because she couldn't handle the stress (Tr. 276).

Upon exam, Dr. Lathan observed that Plaintiff had no pathological disturbances in thought processes, thought content or perception, and she did not express any bizarre mannerisms or unusual behavior (Tr. 277). While her mood was depressed, her affect was appropriate, and her language was intelligible (Tr. 277). She reported getting some mental health care at the Houston Counseling Center but avoiding these appointments if at all possible (Tr. 277). She stated that her primary care physician would no longer prescribe medication for her mental health and said she needed to go to a psychiatrist (Tr. 277). Plaintiff reported going to the bar on weekends, shopping at Wal-mart, and watching TV (Tr. 277). Dr. Latham stated that Plaintiff did not give her best efforts on testing, and observed that she withdrew from moderate to complex tasks (Tr. 277-278). He concluded that she had low average intelligence, and diagnosed sustained alcohol dependence, polysubstance abuse in remission, a mood disorder and Personality Disorder NOS (Borderline and Negativistic) (Tr. 278). He wrote that Plaintiff was "able to understand, retain and follow simple instructions, and do routine, repetitive tasks," but that her ability to relate interpersonally and handle everyday stressors appeared to be moderately impaired (Tr. 278).

Dr. George Livingstone reviewed Plaintiff's records for the state agency in December 2007 (Tr. 279-296 ). He found that Plaintiff did not have a mental impairment that met or equaled a Listing, but that she had moderate restrictions in activities of daily living; moderate restrictions in maintaining social functioning; moderate restrictions in maintaining concentration, persistence, and pace; and 1-2

3

episodes of decompensation of lasting duration (Tr. 279, 289). He concluded that Plaintiff retained the mental residual functional capacity to carry out simple, routine tasks with normal supervision, and that she would work better dealing with objects ratherthan people (Tr. 295). Dr. William Regan conducted a review on February 12, 2008, and affirmed Dr. Livingstone's assessment and conclusions (Tr. 297).

In July 2008, Plaintiff still reported smoking 2 packs per day and she was instructed to stop smoking (Tr. 310). In June of 2009, her tobacco abuse was noted and she was again told to stop smoking (Tr. 338). In November 2009, Plaintiff was still using cigarettes and experiencing symptoms of chronic obstructive pulmonary disorder ("COPD") including shortness of breath, coughing and wheezing (Tr 331). Smoking cessation was "encouraged extensively" (Tr. 331).

Two weeks after the Administrative Hearing, Dr. Bob Reynolds completed a check-box form entitled Mental Medical Assessment of Ability To Do Work Related Activities (Tr. 348- 349). There is no indication in the record that Plaintiff had a previous treating relationship with this physician. Dr. Reynolds checked boxed indicating Plaintiff would have a "fair"or seriously limited ability to function in 10 of 15 areas, and would have a "poor/none" ability to function in the other 5 areas (Tr. 348-349). In support of his conclusions, he merely wrote "GAD [generalized anxiety disorder], Depression." (Tr. 348-349).

[Doc. 15 pgs. 2-6].

At the administrative hearing on September 4, 2008, plaintiff called Ms. Reba Light, a former employer of plaintiff. Ms. Light testified that she had been plaintiff's employer for 4 or 5 years, and that she let plaintiff return to work several times after dismissing her. Finally, she terminated the plaintiff's employment permanently. She testified that the when the plaintiff would get behind in waiting on customers, she would become tearful and customers would complain. Ms. Light was of the opinion that the plaintiff could not work because of her emotionalism when work became stressful. (Tr. 50-53).

Also at the hearing, the ALJ called Dr. Robert Spangler, a Vocational Expert ["VE"], to testify. After establish the vocational characteristics of plaintiff's past jobs, Dr. Spangler was asked to assume that the plaintiff was "restricted to light work activity...[and] could do no jobs that would expose her to excessive dust, fumes, chemicals and temperature extremes

4

due to breathing problems, and...[that she] can do simple, routine and repetitive jobs that would not require frequent interaction with the general public." When asked if there were jobs the plaintiff could perform with that residual functional capacity ["RFC"], Dr. Spangler identified the jobs of bookkeeping clerks, production machine tender, packer, hand packer and assembler. He testified that, with the restrictions from the full range of light work contained in the question, there would be 70% of 119,843 in the region and 70% of 5,620,761 in the nation. (Tr. 53-54). On examination by the plaintiff's attorney, Dr. Spangler testified that if the plaintiff's testimony were entirely truthful or if she was as limited as described by Ms. Light, there would be no jobs plaintiff could perform. (Tr. 55-56).

In his hearing decision, the ALJ found that the plaintiff had the RFC "to perform light work...except she is limited to simple, routine, repetitive tasks not involving frequent public contact and she must avoid concentrated exposure to dust, fumes, odors, gases, etc." (Tr. 20). The ALJ discussed the plaintiff's credibility, noting her daily activities. He also recounted Ms. Light's testimony. He then found that the plaintiff was not entirely credible to the extent they were inconsistent with his RFC. He stated she had reported even more activities that were contained in the medical reports. He found her pain to be less severe than she asserted. He discussed the report of the "consulting psychologist," Dr. Latham, and stated that the opinion was "well supported" and that he gave it "significant weight." He also gave "significant weight" to the opinion of the State Agency physician. He found that she had a mild restriction in activities of daily living; a moderate restriction in maintaining social functioning; and a moderate restriction in maintaining concentration, persistence and pace.

5

He stated "the severity of the claimant's anxiety and depression restrict her to simple, routine, repetitive tasks with no frequent public contact." (Tr. 21-25). Based upon the testimony of the VE, he found that there were a significant number of jobs the plaintiff could perform. Accordingly, he found that she was not disabled. (Tr. 28-29).

As an initial matter, this hearing decision was uncharacteristically difficult to follow and to analyze. There are no citations to exhibit numbers containing the information being discussed at that point, and almost no use of names or even dates to help locate the source in the record (Tr. 21-26). Apparently, it was expected that a reviewing Court would read, and reread the 349 page record to ferret out where the information was contained, and whether the ALJ was properly describing it. Fortunately for the Commissioner, his counsel did an excellent job of supplying this information to the Court in the brief.

Plaintiff raises no issue regarding the ALJ's determination of her physical RFC or even of his finding regarding her credibility. Any argument based on these is henceforth waived in the appellate process, although there was substantial evidence to support the ALJ's findings as to both. Plaintiff focuses on two arguments. First, she asserts that the ALJs RFC finding was not based upon substantial evidence. In this regard, she states that it did not properly include all of the characteristics and degrees of limitation which her conditions exact upon her ability to work, and did not include all of the limitations imposed by Dr. Latham and the State Agency psychologist and psychiatrist to whom the ALJ said he gave great weight.[1] Second, plaintiff asserts that proper weight was apparently not given to the

---

[1] No mention is made in the brief of the cryptic opinion of Dr. Bob Reynolds which was not before the ALJ. That opinion was considered by the Appeals Council and was not considered a basis for overturning the ALJ's decision. The Court agrees. In any event, no

testimony of Ms. Light, and that the ALJ did not explain his reasons for apparently rejecting it when the VE opined that if Ms. Light's testimony were accurate, there were no jobs which the plaintiff could perform.

With respect to the first argument regarding her mental impairments, the bottom line question is whether there is substantial evidence from mental health professionals to support the ALJ's RFC which was the basis for his question to the VE and for his ultimate finding that the plaintiff was not disabled. Bear in mind yet again that after the ALJ found that she suffered from severe impairments of anxiety and depression, his RFC finding was that "she is limited to simple, routine, repetitive tasks not involving frequent public contact." (Tr. 20).

Although the plaintiff is not extremely specific regarding which limitations the ALJ allegedly disregarded, it is presumed that it was the opinions of Dr. Latham and Drs. Livingston and Regan regarding the plaintiff's moderate limitations in restriction of activities of daily living; difficulties in maintaining social functioning; and in maintaining concentration, persistence and pace.[2]

Dr. Latham opined that the plaintiff "appears to be able to understand, retain and follow simple instructions and do routine, repetitive tasks. Her attention/concentration skills appear mildly *(sic)* but sufficient for simple tasks. Her ability to relate interpersonally appears moderately impaired. Her ability to handle everyday stressors appears to be moderately impaired." (Tr. 278). To this Court, this does not appear to be inconsistent in the least with a limitation to simple, routine, repetitive tasks not involving frequent public

---

argument was raised based upon Dr. Reynolds's opinion.

[2]Dr. Latham found only mild limitations in "attention/concentration."

7

contact.

Even if the failure to use the word "moderate" in the RFC finding and question to the VE is the basis of the plaintiff's complaint in this regard, the actual Functional Capacity Assessment (Tr. 295) of Dr. Livingston, as opposed to his "Summary Conclusions" worksheet (Tr. 293), is totally consistent with the RFC expressed by the ALJ. Dr. Livingston opined that plaintiff "could do simple and lower level detailed tasks w/ normal supervision...would function best in small group work setting w/ tasks dealing w/ objects rather than people...[and that] adaptation would be adequate for the above." His opinion was affirmed by Dr. Regan. While the moderate findings were of Dr. Livingston are almost the same as Dr. Latham's, these equate to an functional capacity finding almost identical to the wording used by the ALJ. His RFC finding and question to the VE is quite adequate and well-supported by substantial evidence.

As for Ms. Light's testimony, the ALJ summarized her testimony stating that Ms. Light "terminated the claimant due to complaints from customers regarding the claimant's slow performance and frequent tearfulness." (Tr. 22). He did not mention her testimony further in his discussion of the evidence. The VE stated that if Ms. Light's testimony were totally accepted, there would be no jobs the plaintiff could perform. (Tr. 56).

The statement of Ms. Light is not on the regulatory footing of the opinion of a treating source, the rejection of which must be specifically addressed in some fashion. 20 C.F.R. §§ 404.1514(d) and 416.913(d) states that, in addition to evidence from medical providers "we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." (Emphasis added). The ALJ listened to Ms. Light. The

8

question is, was he somehow obligated to make specific findings of the weight or lack of weight he gave it such as would have been the case with a treating medical source? Other circuits have held specifically that a failure to address lay testimony is harmless error at best. *See*, *Carlson v. Shalala*, 999F.2d 180 (7th Cir. 1993). To this Court, where the ALJ as finder of fact has substantial medical evidence which is contradicted by lay testimony, it makes sense that the finder of fact can accept the medical evidence over the lay testimony. That being true, it simply should not be reversible error that the ALJ did not specifically address the lay testimony and the weight he gave it. The Sixth Circuit has stated that "neither precedent nor common sense requires written discussion of every single piece of evidence." *Allison v. Commissioner of Social Security*, 108 F.3d 1376 (Table) (6th Cir. 1997).

There was substantial evidence to support the ALJ's determination of residual functional capacity and his question to VE. He committed no reversible legal errors. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

10